# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| IOWA VOTER ALLIANCE, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> BLACK HAWK COUNTY, et al., <br><br> Defendants. | No. C20-2078-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS** |

## I.  INTRODUCTION

This case is before me on a motion (Doc. 31) to dismiss filed by defendant Black Hawk County, Iowa, and joined (Doc. 32) by defendant Scott County, Iowa (the counties). Plaintiffs Iowa Voter Alliance, Todd Obadal, Michael Angelos and Diane Holst have filed a resistance (Doc. 34) and the counties have filed a reply (Doc. 35). Oral argument is not necessary. *See* N.D. Iowa L.R. 7(c).

## II.  BACKGROUND

Plaintiffs filed their initial complaint on October 1, 2020.[1] Doc. 1. They alleged that the counties' acceptance of private grants from the Center for Tech and Civic Life (CTCL) to help fund operations for the November 3, 2020, federal election violated federal and state law and harmed their right to vote. *Id.* They sought (1) a declaratory

---

[1] Plaintiff Iowa Voter Alliance is an unincorporated association that seeks to ensure public confidence in government by monitoring elections, election results and the acts of public officials. Doc. 1 at 3–4. Plaintiff Obadal is an Iowa voter residing in Black Hawk County. *Id.* at 4. Plaintiffs Angelos and Holst are Iowa voters residing in Scott County. *Id.* The individual plaintiffs are also members of Iowa Voter Alliance. Doc. 34 at 18.

judgment stating that receiving and using the funds was illegal and (2) an injunction to prevent the counties from using the CTCL grants to help fund the upcoming election. *Id.*

The CTCL is a 501(c)(3) non-profit organization that offered "COVID-19 Response Grants" to local election jurisdictions that lacked sufficient funding to cover the extra, unforeseen costs of conducting an election safely during a pandemic. Doc. 1-2. Because the counties had not factored such costs into their budgets for the November 2020 election, they applied for, and received, grants from the CTCL. Docs. 16-4, 26-1. Black Hawk County received $267,500 while Scott County received $286,870. *Id.* Both counties signed the CTCL's "Grant Agreement," which required, among other things, that the counties (1) use the funds "exclusively for the public purpose of planning and operationalizing safe and secure election administration" and (2) "produce a brief report explaining and documenting how grant funds have been expended" in accordance with the counties' submitted plans for carrying out a safe and secure election during the COVID-19 pandemic. Docs. 16-3, 35.

Because the November 2020 election was rapidly approaching, plaintiffs filed a motion for a temporary restraining order (TRO) on October 6, 2020. Doc. 6. I held a hearing on the TRO request on October 20, 2020, and entered an order denying the request the same day. Docs. 21, 23.

On October 28, 2020, the counties moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and (6). Docs. 26, 27. Plaintiffs responded on November 11, 2020, by filing an amended complaint and a motion to stay ruling on the counties' motion to dismiss. Docs. 28, 29. The counties then renewed their joint motion to dismiss, rendering moot their original motion to dismiss and plaintiffs' motion to stay. Docs. 31, 32, 33.

The amended complaint raises largely the same claims raised in the original complaint. Doc. 28. However, because the election is over, plaintiffs now seek (1) a declaratory judgment that the counties' use of the CTCL grants to help fund the 2020 election violated federal and state law and (2) an injunction preventing them from using

2

CTCL grants, or any other private election grants, in the future. *Id.* The counties again contend that plaintiffs' claims should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of standing and failure to state a claim for which relief can be granted. Doc. 31.

## III. APPLICABLE STANDARDS

### A. Rule 12(b)(1) – Lack of Standing

The federal courts are courts of limited jurisdiction that "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993). The Federal Rules of Civil Procedure authorize a motion to dismiss a complaint due to a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proving subject matter jurisdiction is on the plaintiff. *V S Ltd. Partnership v. Department of Housing and Urban Development*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Nucor Corp. v. Nebraska Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)). Moreover, a federal court has a special obligation to consider sua sponte whether it has subject matter jurisdiction in every case. *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011). If a plaintiff lacks standing to pursue a claim, then the court has no subject matter jurisdiction. *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002). "Therefore, a standing argument implicates Rule 12(b)(1)." *Id.* When determining standing, the emphasis is on whether the plaintiff "possesses a legally cognizable interest, or 'personal stake,' in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011)). Generally, a plaintiff must assert his or her own legal rights and cannot assert the legal rights of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Where a party limits its subject matter jurisdiction attack to the face of the complaint, the attack is a "facial challenge." *Jones*, 727 F.3d at 846 (citing *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 680 (8th Cir. 2002)). When presented with

a facial challenge, "'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). Those protections include treating the complainant's factual allegations as true and dismissing the action only if it appears beyond a doubt that the complainant can prove no set of facts in support of its claim that would entitle it to relief. *Osborn*, 918 F.2d at 729 & n.6.

By contrast, when a party makes a factual challenge to the district court's jurisdiction pursuant to Rule 12(b)(1), "'no presumptive truthfulness attaches to the [complainant's] allegations, and the existence of disputed material facts will not preclude [the court] from evaluating . . . the merits of the jurisdictional claims.'" *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (quoting *Osborn*, 918 F.2d at 729–30 & n. 6). Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the *issue to determine whether in fact subject matter jurisdiction exists*.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (emphasis added) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).

Here, the attack is facial, not factual, as the counties argue that plaintiffs' allegations do not meet the legal requirements to establish standing. Therefore, I will consider only the parties' pleadings.

### B. *Rule 12(b)(6)*

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

4

The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir.

5

2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes," pursuant to Federal Rule of Civil Procedure 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *Id*. These documents include "exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

## IV.  DISCUSSION

The counties argue that plaintiffs (1) lack standing to bring suit and (2) have failed to state any claim for which relief can be granted.  My analysis begins and ends with the standing issue.

The doctrine of standing ensures that courts hear only "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  As the Supreme Court has explained:

> [T]he irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
>
> The party invoking federal jurisdiction bears the burden of establishing these elements.  Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.

*Id.* at 560–61 (citations omitted); *see also City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007).  The requirement of standing "ensures that [judges] act *as judges*, and do not engage in policymaking properly left to elected representatives." *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013).  The "'[f]irst and foremost' of standing's three elements" is showing an "injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)).

Plaintiffs' various allegations of injury fall into three categories.  At the heart of each alleged injury is the fact that the CTCL grants came with certain "conditions" set by the CTCL, a non-governmental entity.  First, plaintiffs argue that use of the CTCL grants burdened their right to vote by compromising the integrity of the election.  Second,

7

plaintiffs argue that conditions set by the CTCL constituted an extra layer of impermissible election regulation that violated the equal protection clause of the Fourteenth Amendment. Third, plaintiffs argue that the CTCL grants harmed their right to political participation under the Ninth Amendment and that the Ninth Amendment includes a right to standing when the government undermines the integrity of the election process.

With regard to plaintiffs' first alleged injury, there is no doubt that the right to vote is sacrosanct and that any burdens on that right are, in general, judicially cognizable injuries. *See Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018); *see also Reynolds v. Sims*, 377 U.S. 533, 555 (1964) ("The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government."). In this case, however, plaintiffs have failed to allege a concrete and particularized injury. "A person's right to vote is 'individual and personal in nature,'" and voters must "allege facts showing disadvantage to themselves as individuals" to have standing to sue. *Gill*, 138 S. Ct. at 1929. The sole "disadvantage" plaintiffs claim is that the counties' use of the CTCL grants to fund an election burdened their right to vote by compromising the integrity of the election. While maintaining the integrity of elections is fundamental to a functioning democratic system and is a compelling government interest,[2] the injury plaintiffs claim is abstract and not particularized to them. They have not alleged any manner in which any plaintiff's individual ability to cast a vote in the election, and have it effectively counted, was directly burdened. Indeed, their theory of harm consists of no more than a chain of interrelated generalized grievances.

---

[2] *See, e.g., Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006); *see also Burdick v. Takushi*, 504 U.S. 428, 441 (1992) ("[T]he right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system.").

8

Plaintiffs' reasoning is as follows: If counties use grants that have conditions set by a private entity to help fund an election, they violate state and federal law and break the social contract between themselves and their citizens. If counties break the law and social contract in conducting elections, the integrity of those elections is compromised. If the integrity of elections is compromised, the right to vote is rendered meaningless. And if the right to vote becomes meaningless, plaintiffs' right to vote is harmed. Therefore, according to plaintiffs, the counties' use of grants awarded under conditions set by a private entity to help fund the 2020 election caused injury to plaintiffs' right to vote.

This argument begins unravelling with plaintiffs' premise that the counties' use of the CTCL grants violated state and federal law. Even if I could assume that this premise is correct,[3] that violation alone would not give rise to an injury in fact conferring standing on plaintiffs. It is clear that "an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)); *see also United States v. Hays*, 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power."). Plaintiffs' alleged injury from such a violation would not be particularized, as it would not be distinguishable from the injury to every citizen. *See Hollingsworth,* 570 U.S. at 706. To have standing, plaintiffs must show a concrete and

---

[3] I remain thoroughly unconvinced that the counties violated any particular law by accepting the CTCL grants. I addressed this issue in my order denying a temporary restraining order. Doc. 23 at 5-7. Plaintiffs have adjusted their arguments to some extent, such that they now focus on the acceptance of private election grants that come with conditions rather than the general acceptance of private election grants. Nonetheless, they have still failed to demonstrate that the counties violated any law by accepting the grants.

9

particularized injury beyond the generalized grievance arising from a violation of the law. *Carney v. Adams*, 141 S. Ct. 493, 499 (2020).

The same is true with regard to a violation of the theoretical social contract between citizens and their government. Plaintiffs have not provided, nor have I found, any authority delineating the rights established by the theoretical social contract, or any basis for concluding that it is a legally protected interest. But even if it is a legally-protected interest, a violation of the social contract would be, by its nature, an injury to all of society and thus a generalized grievance, not a particularized harm. *See Pennsylvania Voters All. v. Ctr. Cty.*, No. 4:20-CV-01761, 2020 WL 6158309, at *5 (M.D. Pa. Oct. 21, 2020) (rejecting a similar social contract argument because it would allow "any citizen of the United States . . . to challenge any constitutional violation for any reason," which is inconsistent with "the entirety of standing doctrine as it exists today").

Plaintiffs argue that they suffered injury beyond their interest in having the government comply with election laws because the integrity of the election was compromised by the counties' violations. But their allegations do not show a concrete or particularized injury related to the integrity of the election or their right to vote. All citizens, and the government itself, have an interest in maintaining the integrity of elections. Because plaintiffs cannot show how the counties' alleged violations compromised the integrity of the election such that they were injured in a personal and individual way, their injury is undifferentiated from the injury to any other citizen. *See United States v. Richardson*, 418 U.S. 166, 177 (1974). They merely allege a generalized grievance arising from another alleged generalized grievance.

Plaintiffs' integrity-of-the-election argument similarly fails to show a concrete injury. Plaintiffs claim that the counties' use of an election grant with conditions set by a private entity to fund an election violated Iowa Code § 47.3(2) and (4), the Help America Vote Act (HAVA), the National Voters Registration Act (NVRA) and the Elections Clause of the U.S. Constitution. They also claim that using such grants violated

10

the social contract between the government and its citizens because the social contract envisions (1) that the government will follow its laws regarding elections, (2) that the government will not allow non-governmental entities to interfere with the election process and (3) that the government will hold uniform elections. However, plaintiffs have failed to show a concrete and specific way in which these alleged violations compromised the integrity of the election. They simply hypothesize that a violation of any election-related law results in the integrity of any proximate election being compromised. They have not alleged facts establishing that the counties' alleged violations compromised the integrity of the election in a way that harmed their ability to cast a meaningful vote. In the absence of facts showing such a causal chain of events, plaintiffs are again left with only an allegation that they were harmed by the violations of law alone, a generalized grievance. *See Landes v. Tartaglione*, No. CIV.A.04-CV-3164, 2004 WL 2397292, at *3 (E.D. Pa. Oct. 26, 2004), *aff'd*, 153 F. App'x 131 (3d Cir. 2005) (holding that law permitting the use of absentee ballots did not cause legally cognizable injury to plaintiff because she only alleged general and abstract fears regarding voter fraud and the integrity of the elections rather than a concrete and specific injury to her right to vote).

In short, even if the counties violated the law, or the social contract, by accepting private election grants that included some conditions, plaintiffs have failed to show a concrete and particularized injury beyond the generalized grievance arising from a violation of the law. Their first category of alleged injury does not confer standing.

Plaintiffs' second and third alleged injuries also fail to show an injury in fact. According to plaintiffs, allowing the counties to use the CTCL grants violated the equal protection clause of the Fourteenth Amendment by subjecting citizens of those counties, such as themselves, to a layer of election regulation to which other citizens are not subjected. However, the fact that these two counties used CTCL grants, while some other counties in Iowa did not, does not show an equal protection injury to plaintiffs under the Fourteenth Amendment. Plaintiffs must show that they have been subjected to a concrete and particularized injury to which others have not been subjected. *See Hays*,

11

515 U.S. at 743–44 (noting that "[t]he rule against generalized grievances applies with as much force in the equal protection context as in any other," so only "'those persons who are personally denied equal treatment' by the challenged . . . conduct" have standing to sue). The same is true of plaintiffs' claim that the counties' use of the CTCL grants harmed their Ninth Amendment right to political participation. To the extent such a right exists, and is a legally protected interest,[4] plaintiffs still must show that their interest was harmed in a concrete and particularized way. Because plaintiffs have raised only abstract and generalized grievances, as discussed above, they have not shown injury in fact sufficient to have standing for claims under the equal protection clause or the Ninth Amendment.

Thus, none of plaintiffs alleged injuries constitutes an injury in fact, as they have failed to allege facts showing that the counties' actions resulted in a concrete and particularized injury to their right to vote or to their rights under the Fourteenth and Ninth Amendments. Instead, they have done no more than assert "generalized grievance[s] against governmental conduct of which [they] do[] not approve." *Gill*, 138 S. Ct. at 1930 (quoting *Hays*, 515 U.S. at 745). While these grievances may be valid and warranted, the doctrine of standing requires plaintiffs to seek a remedy through the political process, not through the federal courts. *See Richardson*, 418 U.S. at 179 ("It can be argued that if respondent is not permitted to litigate this issue [for lack of standing], no one can do so. In a very real sense, the absence of any particular individual or class to litigate these claims gives support to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process.").

Finally, if plaintiffs could show an injury in fact, they would lack standing due to a lack of redressability. When plaintiffs seek declaratory and injunctive relief, as is the

---

[4] Plaintiffs have not provided, nor have I found, any controlling or persuasive authority supporting their argument that the Ninth Amendment includes a protected right to political participation that provides independent grounds for standing.

12

case here, they cannot rely on "past injuries alone . . . to establish standing." *Frost v. Sioux City, Iowa*, 920 F.3d 1158, 1162 (8th Cir. 2019) (quoting *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011)). Because injunctions "cannot conceivably remedy any past wrong," *Steel Co.*, 523 U.S. at 108, plaintiffs must show that further injury is imminent, or that they are likely to suffer the alleged injuries again in the future, to obtain injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Similarly, to obtain a declaratory judgment plaintiffs must show that "a 'specific live grievance'" exists in the form of an ongoing injury, or an immediate threat of injury, to have standing, "not just an 'abstract disagreemen[t]' over the constitutionality" or legality of the challenged prior conduct. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 479 (1990) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580 (1985)); *Frost*, 920 F.3d at 1162.

Here, plaintiffs have failed to show that their alleged injuries can be redressed through declaratory and injunctive relief. The election for which the counties used the CTCL grants is in the past and plaintiffs have made no allegations in their amended complaint as to how the counties' use of the grants leading up to and during the election continues to cause, or threaten, further harm. Without a "present right" being harmed or threatened by the counties' actions, plaintiffs lack standing for declaratory relief.[5] *See*

---

[5] Finding that plaintiffs lack standing for declaratory relief because the election has passed is not the same as finding that their claims are moot. Both the standing analysis and the mootness analysis ask whether there is a live controversy between the parties. However, standing asks whether a plaintiff has suffered a concrete and redressable injury when the case is commenced, while mootness asks whether parties still have an interest at stake in ongoing litigation for which standing had already been established. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191–92 (2000). This distinction is important because courts may retain jurisdiction over moot cases under certain exceptions that do not apply to the issue of standing. *Id.* But the distinction is not particularly relevant here. Because plaintiffs filed an amended complaint after the election, they lack standing for a declaratory judgment regarding the counties' actions leading up to and during that election. Even if plaintiffs had not filed an amended complaint, their case would still be dismissed for lack of standing, rather than mootness because, as discussed above, they did not allege a concrete and particularized injury in either their original or their amended complaint.

13

*Frost*, 920 F.3d at 1161–62.  Plaintiffs have also failed to show that future harm is imminent or likely because the counties intend to use CTCL grants, or other similar private grants, in the future.  The stated purpose of the CTCL grants (assisting with the unforeseen costs of conducting an election during the COVID-19 pandemic) and the absence of a national election in the near future combine to provide little reason to believe (1) that there is any immediate threat of harm to plaintiffs' asserted interests or (2) that the counties are likely to obtain similar grants in the future.  Without showing an ongoing or likely future injury, plaintiffs have no need for or right to injunctive relief.  Thus, standing is also lacking on the basis of redressability.

Plaintiffs' claims must be dismissed for lack of standing because they have failed to show an injury in fact that can be redressed by a favorable outcome in this court.[6]  Due to the lack of standing, there is no need to address the counties' remaining arguments.

## V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (Doc. 31) the amended complaint (Doc. 28) is **granted** and this case is hereby **dismissed with prejudice**.  The Clerk of Court shall **close this case**.

---

[6] Technically, the standing analysis for Iowa Voters Alliance, as an organizational plaintiff, differs slightly from that for the individual plaintiffs.  An organizational plaintiff may have standing either (1) based on its own injury or (2) as a representative of its members.  *Warth*, 422 U.S. at 515.  Plaintiffs argue that Iowa Voters Alliance has at least representative standing because its members, which include the named individual plaintiffs, have standing to sue.  Doc. 34 at 17–18.  However, because plaintiffs have failed to show that any of the individual plaintiffs have standing, the Iowa Voters Alliance does not have standing in an individual or representative capacity.

**IT IS SO ORDERED.**

**DATED** this 27th day of January, 2021.

_____
Leonard T. Strand, Chief Judge